FRANK PEREZ, ESQ.
Nevada Bar # 5738
McCULLOUGH, PEREZ & ASSOCIATES, LTD.
601 South Rancho Drive, #A-10
Las Vegas, Nevada  89106
(702) 385-7383
FAX (702) 385-6744
E-Mail: fperez@mcpalaw.com
Attorneys for Defendants
A.V. Carriers, Inc. and
Gildardo Garcia

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

MICHAEL A. VONSLOCHTEREN,

             Plaintiff,

vs.

CECILIE BAIN LEE; WILLIAMS SCOTT LEE;
GILDARDO GARCIA; A.V. CARRIERS, INC.;
an Illinois Corporation; ABC CORPORATIONS
1-5 inclusive; BLACK & WHITE COMPANIES
1-5 inclusive, and JOHN ROES 1-5, inclusive,

             Defendants.

)
)  CASE NO:  3:12-cv-00663-LRH-VPC
)
)
)
)
)
)
)
)
)
)
)
)
)

## MOTION FOR PARTIAL SUMMARY JUDGMENT
## ON THE ISSUE OF LIABILITY

     Defendants GILDARDO GARCIA and AV CARRIERS, INC., by and through their

attorneys of record, the law firm of McCullough, Perez and Associates, Ltd. hereby move this

Court for an award of partial summary judgment on the issue of liability.

     The motion is based upon the papers and pleadings of file, the attached exhibits and

affidavits, the Point and Authorities submitted herein, and any oral arguments entertained by the

. . .

. . .

Court at the hearing on this matter.

DATED this _____ day of October, 2013.

McCULLOUGH, PEREZ & ASSOCIATES, LTD.

By:_____

CHRISTOPHER R. McCULLOUGH, ESQ.
Nevada Bar # 1138
FRANK PEREZ, ESQ.
Nevada Bar # 5738
601 South Rancho Drive, #A-10
Las Vegas, Nevada  89106
*Attorneys for Plaintiffs*

**I    FACTUAL BACKGROUND**

**A.    SUMMARY OF CASE**

This case arises from a motor vehicle accident that occurred on December 28, 2012.  The accident took place on Highway 80 near mile marker 328.  There was a heavy snow fall that evening.  At sometime a pickup truck driven by the LEE defendants came to a stop on the highway.  The vehicle came to rest in the left lane of the two lane highway.  The LEE vehicle apparently hit some black ice as the road went from paved ground to a bridge.

Traveling towards the LEE vehicle was Defendant GARCIA and Plaintiff.  Mr. Garcia was driving a semi-truck in the right lane.  Initially traveling behind Mr. Garcia was Plaintiff.  Plaintiff was driving a large pickup with a trailer.  Plaintiff then made a passing move in order to get around Mr. Garcia.  Plaintiff moved his vehicle into the left lane, and accelerated past Mr. Garcia.

Plaintiff continued to accelerate, and was moving ever faster towards the LEE vehicle.  Upon seeing the LEE vehicle, Plaintiff increased his speed and moved into the right travel lane.  Plaintiff's truck then hit Garcia, causing the front tire to blow out.  Plaintiff also struck the LEE

vehicle.

Plaintiff filed suit alleging negligence against both LEE and GARCIA and AV CARRIERS.[1] This motion seeks to establish, as a matter of law, no negligence can be found against GARCIA. The motion does not address liability as to LEE, nor does it address any alleged damages suffered by Plaintiff.

## B. STATEMENT OF UNDISPUTED MATERIAL FACTS

Except where noted, the description of the event is obtained from Plaintiff's answers to Defendant Lee's interrogatory No. 2.[2]

1. On December 28, 2010, at approximately 9:50 p.m. Plaintiff was traveling on highway 80.

2. There was a heavy snow fall at that time.

    (see video submitted with motion)

3. At mile marker 328, highway 80 is a two lane highway.

4. Plaintiff was initially in the right travel lane.

5. Plaintiff speed was approximately 60 miles per hour.

6. Plaintiff approached a semi-truck driven by Mr. Garcia.

---

[1] Plaintiff's claims against AV Carriers are based upon respondeat superior; as such its liability is derivative of Mr. Garcia.

[2] Plaintiff's description of the event is as follows;

*On December 28th, 2010, at about 9:50 p.m. at mile marker 328 on I-80, while passing a semi truck and trailer (identified as A.V. Carriers) my lights caught a vehicle broadside in my passing lane. To keep from t-boning the Lee vehicle, I moved over to the right as far as I could. As I accelerated to overtake the semi truck and avoid broad siding the Lee vehicle, I attempted to pass in front of the semi truck. I struck the front fender and along the driver side of my pickup; when the dual wheels of my pickup hit the Lee pickup I was knocked sideways to the right. My trailer then scraped the semi truck from the fuel tank and bumped the front of the semi truck. This caused my trailer to "fishtail" to the left and then to the right before I got my trailer under control to bring the truck and trailer to a controlled stop.*

*While passing, I was traveling at about 60 mph; but when attempting to avoid the collision, I accelerated.*

7. Due to the snow storm, Mr. Garcia was traveling approximately 45 m.p.h.[3]

8. Plaintiff changed to the left lane in order to pass Mr. Garcia.

9. At some time prior to either Mr. Garcia or Plaintiff approaching mile maker 328, a vehicle driven by the LEE defendants had hit a patch of black ice, and spun out of control. The Lee vehicle lost control has in when from paved ground to a bridge over a ditch. The LEE vehicle came to rest in the left lane.[4]

10. Mr. Garcia noticed the Plaintiff's vehicle in his side mirror. The speed of Plaintiff's vehicle caught the attention of Mr. Garcia, he felt that Plaintiff was traveling at a speed too great for conditions.[5]

---

[3] Mr. Garcia's answer to Plaintiff's Interrogatory No.10 reads;

*As I was driving on I-80, I estimate my speed was approximately 45 miles per hour due to the heavy snow fall. My speed was between approximately 35mph and 40mph prior to Plaintiff slamming into my truck (I had taken my foot off the accelerator prior to Plaintiff crashing into my truck. Approximately 35mph at the time of impact, and approximately 35mph when I applied my brakes in order to bring the truck to a controlled stop.*

[4] Cecilie Lee Answer to Plaintiff's Interrogatory No. 9 read;

*I was driving in a remote area on westbound on Interstate 80. Snow was falling, and increasingly sticking to the road. I drove slowly, with my lights on, following in the tracks of the vehicle in front of us. Around mile marker 328, the highway went onto an overpass, and the truck lost traction, and spun. I then started to maneuver the truck to get it pointed westbound. I backed up the truck so the rear bumper of the truck was near the barrier of the inside lane. Then I saw four headlights approaching us, and I looked back to see if I could back up anymore and couldn't. Seconds later we were hit, and the truck I was driving was struck on its right front side, pushing the truck so that it faced west. It was no longer operable.*

*At this time, the only perspective from which I have seen the accident is that described above. However, it appears Plaintiff was not using due care under the circumstances, and was driving too fast for conditions.*

[5] Mr. Garcia's Answer to Plaintiff's Interrogatory No. 9 reads;

*Plaintiff's vehicle was moving at a very high rate of speed for the weather and road condition. There was a heavy snow fall at the time of the accident. I noticed a vehicle traveling at a high rate of speed attempting to pass on my left. I then noticed a vehicle that was disabled in the left lane. I took my foot off the accelerator and began to slow down. There was a bridge,*

11. Mr. Garcia then noticed the LEE vehicle.  Mr. Garcia maintained his truck in the right lane and took his foot off the accelerator in order to slow down.  At this time, all three vehicles were on the bridge, thereby preventing Mr. Garcia from moving his truck any further to the right. (See footnote 4)

12. Plaintiff upon seeing the LEE vehicle tried to avoid the LEE vehicle by moving to the right and accelerating.  Plaintiff moved into the right travel lane and struck Mr. Garcia.

13. Plaintiff's vehicle had a video recording system running at the time of the incident.  The video provides an "eye-witness" account of the accident.

## II    STANDARD FOR SUMMARY JUDGMENT

The Supreme Court has instructed that the purpose of Rule 56 is to "enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues." *Lujan v. National Wildlife Federation,* 497 U.S. 871, 888, 110 S.Ct. 3177, 3189, 111 L.Ed.2d 695 (1990).

To be certain, Rule 56 "*mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552 (emphasis added). Plainly, Rule 56 means what it says: "judgment ... shall be rendered *forthwith* if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

_____ (continued)
*which prevented me from moving any further to my right.  The car in the left lane (the Plaintiff) continued to accelerate, despite there being a disabled vehicle in the left lane.  He then slammed into my truck.  He caused my front left tire to blow out.  I was able to bring my truck to a controlled stop some distance down the road.*

show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c) (emphasis added).

Furthermore, the party moving for summary judgment must "demonstrate the absence of a genuine issue of material fact," but need not *negate* the elements of the nonmovant's case. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553; *see Lujan,* 497 U.S. at 885-86, 110 S.Ct. at 3187. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response. If the movant does, however, meet this burden, the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2553-54.

This burden is not satisfied with "some metaphysical doubt as to the material facts," *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356, by "conclusory allegations," *Lujan,* 497 U.S. at 871-73, 110 S.Ct. at 3180, by "unsubstantiated assertions," *Hopper v. Frank,* 16 F.3d 92 (5th Cir.1994), or by only a "scintilla" of evidence, *Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082 (5th Cir.1994).

We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. *We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. See Lujan,* 497 U.S. at 888, 110 S.Ct. at 3188 (resolving actual disputes of material facts in favor of nonmoving party "is a world apart from `assuming' that general averments embrace the `specific facts' needed to sustain the complaint.... It will not do to `presume' the missing facts because without them the affidavits would not establish the injury that they generally allege").

Moreover, the nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in *any* case "where critical evidence is so weak or tenuous on an essential

fact that it could not support a judgment in favor of the non-movant." *Armstrong v. City of Dallas,* 997 1076*1076 F.2d 62 (5th Cir.1993). If the nonmoving party fails to meet this burden, the motion for summary judgment must be granted.

Our application of Rule 56 today as mandated by the Supreme Court, finds support in principles of fairness and judicial economy, particularly in the light of backlogs in the district courts and the high cost of litigation. A plaintiff should not be required to wait indefinitely for a trial when the defendant has a meritless defense that can be resolved on motion for summary judgment. Nor should a defendant be required to bear the unnecessary costs of delay and trial to defend against a claim that has no merit. Neither party should be required to bear the costs of trying all of the issues in a case when some can and should be resolved on summary judgment. Nor is it fair to require other cases to languish on the district courts' trial dockets because of cases that present no genuine questions of material fact. As Judge Rubin stated for this court in *Fontenot,* 780 F.2d at 1195, "[T]rial would be a bootless exercise, fated for an inevitable result but at continued expense for the parties, the preemption of a trial date that might have been used for other litigants waiting impatiently in the judicial queue, and a burden on the court and the taxpayers."

Notwithstanding the long history of summary judgment procedure, some parties will always complain that summary judgment unfairly deprives a party of the right to have the case heard by the trier of fact. No one, however, should be heard to question the fairness of requiring a party to meet basic evidentiary and procedural burdens in the trial of a case. Summary judgment requires no more. If, after adequate time for discovery, a party cannot produce proof that it has facts to support its case, then the case should be resolved at that point, and this is true irrespective of the type of case. Little v. Liquid Air Corp., 37 F. 3d 1069 (Court of Appeals, 5th Circuit 1994).

## III   DEFENDANT GARCIA AS A "FAVORED DRIVER" WAS ENTITLED TO MAINTAIN HIS LANE OF TRAVEL

### A.   As the Disfavored Driver Plaintiff Improperly Changed Lanes

A "favored driver" is a driver that has the right of way, while a disfavored driver is one that invades the favored driver's right of way.   Florio v. Tilley, 75 N.E.2d., 253 (Ind. Ct. App. 2007); citing to Channel v. Mills, 890 P.2d 535, 537 (Wash. Ct. App. 1995).   Mr. Garcia, for purposes of analysis, is the favored driver.   Mr. Garcia was traveling in the right lane, when Plaintiff attempted to change lanes.

Attempts to pass a vehicle on the left are governed by N.R.S. 484B.207 which reads:

> **Overtaking vehicle on left side: Duties of drivers of overtaking and overtaken vehicle; additional penalty for violation committed in work zone.**
>
> *1.   The driver of a vehicle overtaking another vehicle proceeding in the same direction shall pass to the left thereof at a safe distance and shall not again drive to the right side of the highway until safely clear of the overtaken vehicle.*
>
> *2.   Except when overtaking and passing on the right is permitted, the driver of an overtaken vehicle shall give way to the right in favor of the overtaking vehicle upon observing the overtaking vehicle or hearing a signal. The driver of an overtaken vehicle shall not increase the speed of the vehicle until completely passed by the overtaking vehicle.*
>
> *3.   A person who violates any provision of this section may be subject to the additional penalty set forth in NRS 484B.130.*

The undisputed evidence shows that Plaintiff's attempt to pass Mr. Garcia violated NRS 484B.207.   Plaintiff had a duty to wait until a "safe distance" had passed before attempting to return to the right lane.   Plaintiff is the "disfavored driver" in this case.

Mr. Garcia was entitled to maintain control of his lane.   Mr. Garcia did not increase his speed.   Quite the opposite, as he testified; Mr. Garcia actually slowed his vehicle down.   He took his foot off the accelerator.   Given the snowing conditions, it was the safest move he could make. To do otherwise would have risked jack knifing his semi truck on an icy road during a snow

storm, and losing control of his vehicle.

Plaintiff is attempting to find liability on the part of Mr. Garcia based upon timing. Meaning, that if Mr. Garcia had been traveling a different speed, then he would not have been at the location where the "disfavored driver" (Plaintiff) improperly changed lanes into the "favored driver" (Mr. Garcia). The "mere location" rule has been soundly rejected.

> *The question is whether, and when, a favored driver's speed should be deemed a "proximate cause" of a collision. The question supposes a favored driver who has the right of way but is speeding; a disfavored driver, pedestrian or cyclist who invades the favored driver's right of way; and an ensuing collision. Channel v. Mills 890 P.2d 535, 77 Wn. App. 268 (1995).*

The Channel court performed an extensive analysis of speed as a contributing factor in automotive negligence claims; in particular, whether it constituted "proximate cause" of an accident. The analysis looked a various fact patterns in which a "disfavored driver" crossed into a "favored driver". Repeatedly excessive speed was not found to a proximate cause simply because it put the vehicle at particular place at a particular time.[6]

### B.   The Video Shows Mr. Garcia Operated His Vehicle Properly

This case is unusual in that there is a video that was taken from the Plaintiff's vehicle which shows exactly how the accident happened. The video of the accident confirms that Mr. Garcia did not act in a negligence manner. The video of the incident provides the court a visual account of what transpired. A copy of the video is being submitted for the court's review.

The video is split into multiple segments. The first shows a four video feeds. They are designated CH1, CH2, CH3 and CH4. CH1 is a front view of the Plaintiff path of travel. CH3 and CH4 are rear facing views from each side of Plaintiff's vehicle. CH2 is a blue screen as no camera was attached to that feed. After the four panel view, each individual camera's view is

---

[6] Notably Plaintiff is not claiming that Mr. Garcia was speeding for conditions. In fact Mr. Garcia was operating his vehicle at safe speed given the snow storm that was present.

played.

The video has a time designation for the entire length of the video. Within the video is time stamps covering real time; and naturally repeat for each quadrant. The time stamps for each segment are as follows;

1.  Quadrant view        0:00 to 5:04
2.  CH1                      5:05 to 10:11
3.  CH4                      10:12 to 15:17
4.  CH3                      15:18 to 20:23

The video shows a heavy snowfall plaguing the highway. Visibility was reduced, necessitating a slower driving speed for conditions. Plaintiff was traveling sixty (60) miles an hour as he approached Mr. Garcia's semi-truck. A review of the video shows the following events;

| Video Time Stamp | Real Time Stamp | Description |
|---|---|---|
| 5:15 | 22:48:39 | Plaintiff commences lane change from right lane to left |
| 5:33 | 22:48:59 | Plaintiff is in the left lane; Garcia is in the right lane as Plaintiff continues to pass |
| 5:34 | 22:49:01 | Plaintiff is passing Garcia |
| 5:36 | 22:49:03 | Plaintiff starts move from the left lane to the right lane. |
| 5:38 | 22:49:05 | Moment before Plaintiff hits Lee Vehicle |
| 10:44 | 22:49:05 | Plaintiff hits Garcia left from tire (view from CH4) |
| 10:46 | 22:49:07 | Shows the guard rail to the right side of Garcia's vehicle; thereby preventing Mr. Garcia from moving further to his right. |

Mr. Garcia was driving an appropriate speed for the weather conditions. Plaintiff was driving an excessive speed for conditions and elected to pass Mr. Garcia. Plaintiff entered the left lane where unfortunately the Lee's vehicle had come to a rest. However, Mr. Garcia did not create the unsafe condition. Plaintiff was speeding towards the Lee's and actually increased his speed once he saw the Lee vehicle. Mr. Garcia, took his foot off the accelerator, but could not

slam down on the brakes; to do so would have jack knifed his truck. Mr. Garcia maintained his travel lane, and as the favored driver was entitled to do so.

Did Plaintiff's action result in less harm to the Lee Defendants? Quite possibly, had Plaintiff hit the Lee's head on the results could have been catastrophic for the Lees. So switching lanes and hitting Garcia may have been the lesser of two very bad outcomes. However, that does not change the fact the Mr. Garcia did not operate his vehicle in a negligent manner.

The court should grant summary judgment as to liability in favor of Mr. Garcia and AV Carriers. Plaintiff will still have an opportunity to pursue his claim against the Lees; for the purpose of analyzing this motion any liability attributable to the Lees is irrelevant; as is any contributory negligence by Plaintiff. Mr. Garcia did not cause the accident and therefore summary judgment is appropriate.

DATED this _____ day of October, 2013.

McCULLOUGH, PEREZ & ASSOCIATES, LTD.

By_____
FRANK PEREZ, ESQ.
Nevada Bar # 5738
601 South Rancho Drive, Suite A-10
Las Vegas, Nevada 89106
Attorneys for Defendants A.V. Carriers, Inc.
and Gildardo Garcia

**CERTIFICATE OF SERVICE**

The undersigned does hereby certify that she is an employee of McCULLOUGH, PEREZ & ASSOCIATES, LTD., and that on the ___4th___ day of October, 2013, she deposited a true copy of the foregoing MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF LIABILITY, in the U.S. Mails at Las Vegas, Nevada, postage fully prepaid, addressed to the following:

RICHARD SALVATORE, ESQ.　　　　　MARK A. HUGHS, ESQ.
HARDY LAW GROUP　　　　　　　　　ENZENBERGER, HUGHS &
96 & 98 Winter Street　　　　　　　　　HERBOLSHEIMER
Reno, NV 89503　　　　　　　　　　　1885 So. Arlington Avenue, #205
Attorney for Plaintiff　　　　　　　　　Reno, NV 89509
　　　　　　　　　　　　　　　　　　Attorney for Defendants
BERNARD Q. PHELAN　　　　　　　　Cecile Bain Lee and William Scott Lee
THE PHELAN LAW FIRM
1811 Evans Avenue
Cheyenne, Wyoming 82001
Attorney for Plaintiff


_____
Employee of McCULLOUGH, PEREZ & ASSOCIATES, LTD.